# EXHIBIT 1

Case 1:22-cv-03027-LJL   Document 1-1   Filed 04/12/22   Page 2 of 34

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| EBONI MAJOR,<br><br>                                      Plaintiff,<br>         -against-<br><br>DIAGEO NORTH AMERICA, INC.,<br>                                      Defendant. | Index No.<br><br>**<u>Verified Complaint</u>** |
| --- | --- |

Plaintiff EBONI MAJOR, by her attorneys, Trachtman and Trachtman, by and for her

Verified Complaint against Defendant, Diageo North America, Inc., alleges as follows:

<u>Nature of Action</u>

1.      This is an action for damages arising from unlawful discrimination in

employment/hostile work environment, disparate treatment, and retaliation based on race in

violation of the New York City Human Rights Law (New York City Administrative Code § 8-

107).

2.      During her employment with Diageo North America, Inc., Ms. Major suffered,

*inter alia*, severe and pervasive discrimination, including but not limited to being treated worse

than white women in terms of compensation and expectations, having Ms. Major's hard work

credited to white employees, and Ms. Major's work not given the same recognition as white

employees, which consistently resulted in a hostile work environment and which eventually led to

Ms. Major's constructive termination from her employment in retaliation for the multiple

complaints Plaintiff made.

<u>Parties</u>

3.      Ms. Eboni Major ("Major" or "Plaintiff") is an African-American woman, a

resident of the State of Alabama, and an award-winning whisky blender formerly employed by

Diageo North America, Inc.

4.      Diageo North America, Inc. ("Diageo" or "Defendant" ) is a foreign business corporation with its North American Headquarters located at 3 World Trade Center, New York, New York, which employs at least four (4) people, and is an employer pursuant to the New York City Human Rights Law.

## Jurisdiction and Venue

5.      Jurisdiction is based upon the subject matter herein, to wit: violations of the New York City Human Rights Law ("NYCHRL").

6.      The basis of the venue is the location of Defendant's principal offices, in New York County.

7.      While the events memorialized in this Verified Complaint took place across these United States, the effects of Defendant's continuing course of conduct had a specific impact within New York City with several events evincing Defendant's race-based discrimination, disparate treatment of white employees and employees of color, and retaliation occurring in New York City.

## Facts

8.      In October 2015, Ms. Major commenced working for Diageo as a Blending Intern in Louisville, Kentucky.

9.      Less than a year thereafter, in September 2016, Ms. Major was offered, and accepted, the position of Blending Quality Apprentice, splitting her time between Shelbyville and Stitzel Weller, Kentucky.

10.     In January 2019, Ms. Major was again promoted, this time to Blending Quality Specialist in Shelbyville, Kentucky.

11.     In Shelbyville, Plaintiff was the only African-American employee in the building for the duration of her employment there.

12.     In **April 2017**, Ms. Major attended Diageo's new hire induction in Connecticut.

13.     While attending a training on inclusion and diversity a year and a half after her initial hire, Ms. Major realized that Diageo has standards for inclusion and diversity, which standards had heretofore been unknown to Ms. Major.

14.     Accordingly, Ms. Major complained to non-party Livia Giuseppe, Ms. Major's Human Resources Business Partner, about the discriminatory treatment she received at the hands of her team, including but not limited to differential treatment due to her race.

15.     This differential treatment included a list of Plaintiff's "pros and cons" authored by Plaintiff's supervisor, non-party Andrew MacKay, discovered by Plaintiff in May, 2016.

16.     The "cons" included comments such as, *inter alia*, "victim mentality" while the "pros" included comments such as, *inter alia*, "anticipates needs – collecting samples from TG1 Rye Dis. Run", "reached out to Pam Soule for cont. cook batch ID" and "made Dickel 8 unasked."

17.     Ms. Giuseppe informed Ms. Major that she had filed the complaint and would be transferring the matter to Ms. Major's new Human Resources Business Partner, non-party Karla Castillo.

18.     Upon her return to Shelbyville, the maintenance manager at Shelbyville, non-party Greg Degele, stated to Ms. Major "hey poufy head, what happened to the dreads?"

19.     This was obviously a reference to Ms. Major's change in hairstyle from braids to natural hair, and a pointed comment on Ms. Major's race; Such commentary created a hostile work environment.

20.     In **May 2017**, Ms. Major reached out to Ms. Castillo to complain about the racist commentary on her hair.

21.     In **June 2017**, Ms. Castillo reached out to arrange regular management meetings after Ms. Major complained to Mr. MacKay and Ms. Castillo about the racist "poufy hair" comment.

22.     Neither Mr. MacKay nor Ms. Castillo took any action, although Ms. Castillo recommended that Ms. Major make a comment in return about Mr. Degele's hair.

23.     When Ms. Major refused to return the taunt, fearing disciplinary action, no additional action was taken.

24.     Ms. Major never received an apology or acknowledgement that Mr. Degele should not have made any such comment.

25.     Diageo's failure to counsel Mr. Degele to either apologize or acknowledge that he should have acted differently created a hostile work environment.

26.     That same month, Ms. Major discovered that when she had been promoted to Blending Quality Apprentice in September 2016, Diageo had misrepresented Ms. Major's compensation ratio as 88%, when it was actually 82%, which created a hostile work environment.

27.     This was the first instance wherein Plaintiff learned that Defendant paid its white employees more than Defendant paid Plaintiff.

28.     In **July 2017**, during a site visit from non-party Kate Metcalf, the Sensory Manager and Plaintiff's supervisor, Mr. MacKay in sum and substance called Plaintiff a peon, stating "I remember my days as a peon".

29.     Mr. MacKay then asked Ms. Major a question about crime in front of Ms. Metcalf, citing Ms. Major's African-American ethnicity as the reason for asking her this question.

30.     Obviously, being denigrated and then subjected to blatant stereotyping in this manner created a hostile work environment.

31.     That same month, Ms. Major met with Ms. Castillo to follow up on her compensation ratio discrepancy, with non-party Chris Symons, Director of Blending and Beverage Technology, following up thereafter.

32.     In **August 2017**, Ms. Major commenced management relationship meetings in response to her complaint made April 2017.

33.      On August 11 and 12, 2017, white nationalists demonstrated in Charlotte, Virginia, giving voice to their racist views about people of color.

34.     That same month, Ms. Major worked onsite in Shelbyville, and while in the breakroom one day, Ms. Major overheard a conversation wherein white employees sitting together at a table commented that "blacks should get over statues," referencing the popular movement to remove statues honoring Confederate traitors.

35.     This created a hostile work environment.

36.     Later that month, also at Shelbyville, Ms. Major became aware of the following slogan being displayed: "If you go for Kentucky blue, you must be a Jew."

37.     Ms. Major complained and requested training.

38.     Non-party Claire McIntyre came to present a training on preconceived biases.

39.     The training was only given to administrative and management employees, although the facility's management, non-parties Jessica Chen and Pauline Rooney, were aware that most offensive comments were from the hourly employees in the maintenance department, no training was offered to that class of employee.

40.     In **January 2018**, non-party Kerry Kessinger, a warehouse employee in Shelbyville, sent Ms. Major a text message stating that the warehouse manager and Plaintiff's supervisor, non-

party Joseph Hatcher, instructed Mr. Kessinger not to talk to Ms. Major or face reprimand from management; non-party Austin Blakeman was also given the same message.

41.     Non-party Stephanie Preston, the Distillery Team Leader, and non-party Chelsea Giller, Supply Rotation Intern, were both informed to be careful of their friendship with Ms. Major.

42.     These instructions and warnings came from non-party Jessica Chen, the site director and Plaintiff's supervisor, and created a hostile work environment.

43.     In **March 2018**, Ms. Major made her first marketing trip to New York City.

44.     Plaintiff presented before a We Work International Women's Day Panel and was not remunerated for her work or for the extra time she spent preparing and presenting, nor was she given a Talent Fee.

45.     Upon her return to Kentucky, Ms. Major was attacked by Ms. Dee Lalley, Shelbyville's HR Representative and a white woman, during an events committee meeting.

46.     Ms. Lalley shook her finger in Ms. Major's face and stated "you are the reason we didn't do anything for Black History Month, you had the opportunity to do something for Black History Month and chose not to."

47.     Obviously, Ms. Lalley's action created a hostile work environment, and Ms. Major literally ran out of the events committee meeting, shaking and crying.

48.     Ms. Major complained to Mr. MacKay, her supervisor.

49.     Ms. Major received no apology or acknowledgement that she had been viciously verbally attacked, and Ms. Lalley suffered no consequences.

50.     In **May 2018**, Ms. Major attending Media Training with non-parties Dwayne Kozlowski, Andrew MacKay and Charisse Woods, Distillery Team Leader, the purpose of which

was to train the above-mentioned individuals in how to appear before media in keeping with Diageo's requirements.

51.     Ms. Stephanie Preston, who had previously been cautioned to stay away from Ms. Major, was left out of Media Training with no explanation, although she occupied the same position as Ms. Woods, without reason, indicating that Diageo sought to isolate Ms. Major from her friends and allies.

52.     During this training, Plaintiff fielded questions about being the first African-American Whisky Blender, which demonstrates that Diageo was well aware that Ms. Major was the first.

53.     In **June 2018**, Plaintiff created a blending lab for bartenders during blending season, which was presented at World Class 2018, held in Shelbyville, Kentucky.

54.     These labs took weeks of preparation; Ms. Major was responsible for all material ordering, curation, shipping, set up, event presentation and clean up.

55.     That same month, Defendant sent Plaintiff to California to participate in at least four (4) marketing events over three (3) days in Sacramento and San Francisco, and Ms. Major was left to attend to her own travel arrangements without assistance.

56.     During this trip, Ms. Major continued to attend to her regular duties by logging into meetings with her team and began creating the Bulleit Single Barrel Program.

57.     Ms. Major travelled over the weekend, and thus was eligible for overtime, but she was not compensated accordingly, nor did Ms. Major receive a Talent Fee.

58.     It is noteworthy that, unlike Ms. Major, no white employee who presented on behalf of Diageo was expected to do anything but show up and present, as all of the pedestrian annoyances

Case 1:22-cv-03027-LJL    Document 1-1    Filed 04/12/22    Page 9 of 34

had been taken care of in anticipation of their arrival, thus creating a disparate impact and a hostile work environment.

59.     While in California, Ms. Major and Ms. Giller hosted an on-site Pride Brunch.

60.     Despite having obtained the proper authorizations using the appropriate channels, non-party Ms. Millie Traugott, Shelbyville's Site Coordinator and a white woman, informed Ms. Chen, Shelbyville's Site Director, that the event was unauthorized.

61.     Without determining whether Mr. Traugott's claim was true, Ms. Chen reprimanded Ms. Giller, and Mr. Symons reprimanded Ms. Major.

62.     When Ms. Major provided Mr. Symons with written proof that the event was indeed approved, no apology was forthcoming and Ms. Traugott suffered no consequences for her false and negligent representations, which created a hostile work environment.

63.     The reason for this became clear in June 2020, when Millie Traugott posted racist views on Facebook.

64.     In **July 2018**, after emailing HR and her director regarding mold and humidity issues on site (including the fact that Ms. Major is allergic to mold), Plaintiff purchased and set up a dehumidifier on her own time to prevent health issues.

65.     Diageo's failure to address Ms. Major's health issues on site created a hostile work environment.

66.     In **October 2018**, Ms. Major again traveled to San Francisco, California to participate in marketing events at We Work innovation labs.

67.     Again, these labs took weeks of preparation, and Ms. Major was again expected to attend to all aspects, unlike Defendant's white employees.

68.     Just as in June 2018, Ms. Major was responsible for all travel arrangements, material ordering and curation, shipping, set up, event presentation and clean up, and just as in June 2018, Ms. Major received no Talent Fee and no overtime.

69.     Diageo's failure to acknowledge and properly recompense Ms. Major for her work created a hostile work environment.

70.     In **November 2018**, Ms. Major traveled to New York City to participate in marketing events over a weekend at the NYC Food Loves Tech conference.

71.     This was an event organized by Proof Media.

72.     As before, Ms. Major received neither a Talent Fee nor overtime for her work on behalf of Diageo, which created a hostile work environment.

73.     **December 2018** was a busy month for Ms. Major.

74.     She organized Bulleit Bourbon's first diversity effort in the spirit of community service involving KOBBE Bourbon & Benevolence.

75.     Diageo exploited Ms. Major's relationship with the head of KOBBE, non-party Jamar Mack, a man of color, as well as Mr. Mack's image, to enhance Diageo's reputation as a company that works alongside with entrepreneurs of color.

76.     Ms. Major learned that she had been offered a promotion with a salary less than the median salary of her current position, which position was almost exclusively occupied by white employees, Ms. Major inquired of Ms. Castillo how her salary was calculated.

77.     Diageo's response was to inform Ms. Major that it second-guessed its decision to promote her as Ms. Major's language in her email requesting clarification of the computations of her salary had been "strong."

78.     Ms. Major explained to Ms. Castillo that she was given a large workload within the blending department and performing at a high level, while also playing a significant role in the marketing side but was not being compensated for the value she brought to Diageo.

79.     Defendant offering Plaintiff less compensation than similarly situated white employees created a disparate impact and a hostile work environment.

80.     Ms. Major was offered a feature-length article in Forbes in response to a pitch Ms. Major had herself made to the magazine.

81.     When Ms. Major informed Diageo of this opportunity, non-party Phillip Pearson of Diageo's Marketing Department contacted Ms. Major letting her know that the forthcoming approval to be interviewed was uncertain, as the team felt that Ms. Major "did not seem happy" with her job.

82.     Thereafter, Diageo approved the article.

83.     Following the feature, Diageo's Marketing Department pitched Ms. Nicole Austin, a white Whisky Blender, as an alternative to Ms. Major in media circles.

84.     In **January 2019**, Ms. Major was finally promoted, and she received several emails commenting that her promotion was long overdue.

85.     In **February 2019**, Ms. Major was again selected to participate in a marketing trip to Darden Restaurant Group in Orlando, Florida, to celebrate Black History Month.

86.     It is noteworthy that this was the first Black History Month event involving the Bulleit Brand, which was established in 2003.

87.     Again, Ms. Major was forced to arrange her own travel, and curated a tasting booth for the speaking event, but was not properly compensated for her time, nor was she paid a Talent Fee.

INDEX NO. 153071/2022
RECEIVED NYSCEF: 04/08/2022
Case 1:22-cv-03027-LJL   Document 1-1   Filed 04/12/22   Page 12 of 34

88.     In **March 2019**, Ms. Major was selected to participate in the Total Wine Live Event in Shelbyville.

89.     Despite working overtime in order to participate, as well as participating in a photoshoot, Ms. Major was not properly compensated, nor was she paid a Talent Fee.

90.     That same month, non-party Brenda Oneil, the Maintenance Excellence Manager at Shelbyville, commenced a conversation with Andrew MacKay wherein she attacked both Mr. MacKay's and Plaintiff's criticism of the quality of the liquid used in blending whisky being created at Shelbyville.

91.     Because the conversation involved Ms. Major, Ms. Major joined in.

92.     In response, Ms. Oneil appeared outraged, and repeatedly verbally attacked Ms. Major, specifically informing her that she needed to be quiet and know her place.

93.     That this white woman felt it appropriate to shush an African-American woman during a conversation which directly impacted said woman and then tell her to "know your place" obviously created a hostile work environment.

94.     This incident took place before Mr. MacKay, to whom Ms. Major complained about this harassment.

95.     In response, Mr. MacKay claimed that he spoke with Ms. Oneil about the incident, which was an insufficient response.

96.     Mr. MacKay and Ms. Major contacted, *inter alia*, Ms. Castillo in hopes of resolving the issue, and over the course of several conversations, Ms. Major related how this incident negatively affected her.

97.     Following the complaint, Ms. Oneil cornered Ms. Major while she was making coffee in the breakroom and said "I heard you were hurt by some of what I said...I am sorry if you were... It wasn't my intent."

98.     Thinking that Ms. Oneil approached her to talk it out, Ms. Major responded to state "I understand but in the moment-" but before Ms. Major could finish her sentence, Ms. Oneil interrupted Ms. Major to say "well I am not getting into details" and walked away.

99.     This again created a hostile work environment, with Ms. Oneil once again dictating what Ms. Major could and could not say.

100.    Thereafter, Ms. Major invited Ms. Castillo, Mr. MacKay, and Mr. Symons to a meeting to discuss the situation, but only Mr. Symons accepted her invitation or attended the meeting.

101.    Ms. Major then followed up via email to Ms. Castillo, Mr. Lopez and Mr. MacKay, stating that she feared the hostile work environment would continue should Diageo fail to discuss or address the situation properly.

102.    Ms. Major received no response to her email, which created a hostile work environment stemming from Diageo's failure to support Ms. Major or address the ongoing race-based discrimination she suffered while at work.

103.    Despite suffering discrimination and hostile work environment, as well as the indignity of being treated differently from white employees as well as being repeatedly ignored when she requested help from her supervisors and from Human Resources, non-party Ms. France Noel, Plaintiff's superior, noted the "tremendous improvement" she has seen in Ms. Major's work during Ms. Major's Mid-Year Review.

104.    Consistent with Diageo's practice of exploiting their relationships with individuals of color, Defendant chose Plaintiff to be the literal "poster girl" for a national advertising campaign across Meijer and Total Wine, with her image captured on the hang tag for bottles labeled for sale.

105.    She was not compensated, aside from receiving $100 for the photoshoot.

106.    In **April 2019**, Defendant required Plaintiff to appear at a local store in Louisville, Kentucky, for a marketing event when she was on vacation "because it was a local request" despite not all marketing events being considered "necessary."

107.    White employees were not required to come in during their vacation to participate in marketing events.

108.    Needless to say, Ms. Major was not properly compensated, nor did she receive a Talent Fee for attending this marketing event.

109.    Ms. Major received many, many requests for marketing events, but had no control over which events she was allowed to attend, and at times, Ms. Major wasn't even apprised of which events she was invited to, which did not happen to white employees.

110.    At an offsite team meeting in Plainfield, Illinois (which team included Ms. Major), Ms. Noel asked the team what motivated them.

111.    Non-party Stefan Belanger replied that he was motivated by rewards and raises.

112.    Ms. Major began to agree with what Mr. Belander said when Ms. Noel spoke over Ms. Major to tell her that "you can't complain because you make more than these four," referring to junior blenders on her level – non-parties Taylor Garner, Catherine Wilson, Stefan Belanger, and MarieEve LaLonde.

113.    Ms. Noel made this comment in front of Ms. Major's entire team, including but not limited to non-parties Mark Balkende, Taylor Garner, Andrew MacKay, Debbie Conroy, and

Joanna Scandella, and this comment was deliberately made in order to strain Ms. Major's relationships with her coworkers.

114.    Ms. Noel and Ms. Scandella also made baseless complaints about Ms. Major's working relationship with Ms. Wilson, painting Ms. Major as unreasonable and difficult.

115.    Ms. Noel and Ms. Scandella reported these complaints about Plaintiff not to Plaintiff or to her manager, as was proper, but to Mr. Symons.

116.    Mr. Symons met with Ms. Wilson individually, who upon information and belief informed Mr. Symons that there was no issue between Ms. Wilson and Ms. Major.

117.    In fact, Ms. Wilson and Ms. Major loved working together, and spent time together as friends outside of work.

118.    These deliberate actions created a hostile work environment.

119.    Ms. Major expressed her concerns about the ongoing hostile work environment to Ms. Castillo and Mr. Symons, to no avail.

120.    These were not the only times Ms. Major was negatively impacted by Ms. Noel's attitude.

121.    Over the course of her career, and despite praising her just four months earlier during her review, Ms. Noel intentionally held Ms. Major back.

122.    Although Plaintiff was progressing faster in her job development than her colleagues, Ms. Noel refused to fast track Ms. Major's career, instead promoting other employees, such as MarieEve LaLonde, a white woman.

123.    As Ms. Major was the most lauded blender at Diageo, there was no reason to hold Ms. Major back, except discrimination.

124.    Despite the constant discrimination she faced, Ms. Major successfully pitched Blenders Select in **May 2019**.

125.    In so doing, Ms. Major created a brand new product and, commencing in March 2020, a new income stream for Diageo.

126.    In **June 2019**, Ms. Major was again chosen to participate in a marketing event, this time hosting an exclusive event called the Bourbon Affair; tickets were sold for $200 per person.

127.    Ms. Major also participated in the launch of Bulleit Brand's Visitor Center, another marketing event, in Shelbyville, Kentucky.

128.    Ms. Major was not properly compensated or paid a Talent Fee, which created a hostile work environment.

129.    In an incredible decision, Diageo offered visitors a tour given by Plaintiff for $75/hour, but failed to either consult with Ms. Major or get her approval before offering this tour online.

130.    Diageo's failure to even mention this tour to Ms. Major before offering it online is mindboggling.

131.    While the tour offering was taken down, a white employee certainly would not have suffered this indignity.

132.    In **July 2019**, Ms. Noel gave Ms. Major her end-of-year review.

133.    Therein, Ms. Major again complained about her differential treatment from that accorded to white employees, which complaint Ms. Noel did nothing about.

134.    This created a hostile work environment.

135.    In addition to her regular duties and her marketing duties, Ms. Major commenced working at visitor center part time.

136.    That same month, non-party Rachel Lewis, a white woman, joined Ms. Major's team from Plainfield, Illinois.

137.    Aside from being a nepotistic hire (as Ms. Lewis' partner at the time, non-party Andrew Yourick, worked for Diageo in Louisville), Ms. Lewis had displayed aggressive behavior towards Ms. Major in their prior interactions.

138.    Plaintiff had previously led the Bulleit Single Barrel Program as Diageo's Innovation Department was short staffed, and Ms. Lewis eventually took over for Ms. Major.

139.    Throughout the entire project Ms. Lewis was dismissive and disrespectful towards Ms. Major, including forcing Ms. Major to include her supervisor Mr. MacKay on every telephone call.

140.    Upon learning that Ms. Lewis had joined the team, Ms. Major expressed her concerns to Mr. Symons and Ms. Noel about working with someone who had already demonstrated hostility toward her.

141.    Both Mr. Symons and Ms. Noel asked Ms. Major not to "ambush" Ms. Lewis by mentioning the prior disrespect Ms. Lewis had demonstrated towards Ms. Major, but instead allow her to get comfortable.

142.    Mr. Symons and Ms. Noel both explained that Ms. Lewis had suffered stress in her previous role, as others aside from Ms. Major had complained about Ms. Lewis' attitude.

143.    As a result of Ms. Lewis' "stress", Pietro diPilato, Vice President of Technical Science and Supply simply gave Ms. Lewis the position, although she was not qualified for her new position, and no other candidates were interviewed for the position.

144.    The preferential treatment accorded a white woman created a disparate impact and a hostile work environment.

145.    In **September 2019**, Ms. Major was invited by Southwest In-Flight Magazine to be featured on its cover.

146.    This invitation was contemporaneous with non-party Ms. Hollis Bulleit, a queer scion of the Bulleit family, accusing her father, Tom, the founder of the Bulleit Brand, of pedophilia, alcoholism, and violent behavior.

147.    Ms. Bulleit also accused Diageo of immorality and illegal conduct.

148.    As this PR nightmare unfolded for Bulleit, Plaintiff was informed by Ed Bello and Nicole Anatassi that Southwest In-Flight Magazine opted to remove Plaintiff from the article because of the bad press related to the Bulleit Brand, despite Plaintiff's work on other, less objectionable whisky brands, such as Dickel or IW Harper.

149.    That same month, Ms. Major attended a marketing trip to Disney International Food and Wine Festival in Orlando, Florida, again without proper remuneration or a Talent Fee.

150.    Ms. Major found out that she had been selected to attend this Festival just days before she had to depart, as Diageo would not allow non-party Tom Bulleit to attend due to the allegations made by his daughter.

151.    Despite this last-minute drastic change in schedule, Ms. Major managed to properly prepare for the Festival, including arranging her own travel and curating a last-minute presentation and tasting experience while still attending to her usual duties full-time.

152.    That same month, Ms. Major was interviewed by podcast host and non-party Adam Carolla for his eponymous show.

153.    Before the event, Ms. Major expressed hesitations about participating in the podcast to non-parties Andrew MacKay, Rachel Lewis, Ed Bello, and Nicole Anastasi.

154.    In short, Ms. Major was concerned about being abused during the show, as Mr. Carolla has an offensive comedy style.

155.    Ms. Major was assured that Mr. Carolla had been given notes and talking points.

156.    Despite such reassurance, during this live event (at which Ms. Major was the only person of color in attendance), Mr. Carolla made several racist jokes and included a segment called "What would happen if I got pulled over by the cops" which segment was later edited out.

157.    This was a traumatic experience for Ms. Major and created a hostile work environment.

158.    Finally, Diageo used Ms. Major's photo in a pitch deck to Darden without her consent, yet another instance wherein Diageo exploited Ms. Major's race and talent without remuneration.

159.    In **October 2019**, Ms. Major attended a meeting with Sophie Kelly, Vice President of North American Whisky.

160.    Ms. Kelly is the individual who hired Nicole Austin, a white female distiller, so that Diageo's female marketing personae were not strictly limited to Plaintiff.

161.    During this meeting, Ms. Major expressed that the current structure of her role did not allow Ms. Major the flexibility she needed to perform to her and Diageo's high expectations.

162.    Ms. Major explained the value she brought to the brand, and let Ms. Kelly know that her manager was aware and supportive of this conversation.

163.    Ms. Kelly asked that Ms. Major create a role description and return it to her, which Ms. Major did.

164.    Ms. Major never heard back from Ms. Kelly, and no changes were made to the structure of her position.

Case 1:22-cv-03027-LJL Document 1-1 Filed 04/12/22 Page 20 of 34

165.    Ms. Kelly's failure to respond appropriately created a hostile work environment, and Ms. Kelly would not have failed to reply to a white employee.

166.    Later that month, in preparation for an International Women's Day photoshoot in Louisville, Kentucky, due to a miscommunication regarding glassware, Ms. Austin verbally attacked and humiliated Ms. Major in front of her peers, including non-parties Joanna Scandella (Crown Royal Master Blender), Emma Walker (Johnnie Walker Master Blender), and several ARC employees.

167.    The attack was so vicious that Ms. Major immediately reported it to her manager, Mr. MacKay.

168.    Later that night, Mr. Symons and the blending team joined the group at Doc Crow's restaurant for dinner, and Joanna Scandella confirmed to Mr. Symons the attack upon Ms. Major at this dinner.

169.    Ms. Major complained to both Ms. Kelly and Mr. Symons.

170.    Ms. Austin was not reprimanded for her vicious attack on Ms. Major.

171.    This created a hostile work environment for Ms. Major.

172.    In **November 2019**, Ms. Major was again asked to participate in a marketing trip to Southern California, wherein she would participate in events in Los Angeles, Orange County, and San Diego.

173.    As usual, Ms. Major received no assistance whatsoever, and received neither remuneration nor a Talent Fee.

174.    That same month, Bourbon Review published an article about Tom Bulleit in an attempt to mitigate the PR storm created by his daughter's claims.

175.     Mr. Bulleit, acknowledging that Ms. Major had stepped into his shoes in the wake of his family drama, sent an email to Plaintiff stating: "We hope the article will go a long way to take the pressure off your ambassadorship.  Although all I hear about you are rave reviews."

176.     This email not only acknowledged that Ms. Major was able to market the brand with the same effect as the brand founder, as she had successfully supplanted him in marketing events, but as testimony to the value that Ms. Major brought to the brand.

177.     Ms. Major was invited by Proof Media, the company responsible for the Bulleit Visitor Center and Bulleit's national brand ambassadors, to participate in cocktail judging competition in Austin, Texas, but Diageo refused permission, deeming it not the "best use of her time."

178.     Ms. Major made several complaints to Mr. MacKay and others about being trotted out like a show pony at Diageo's whim and not having a say in the events at which she participated.

179.     Diageo's failure to consult Ms. Major as to which marketing events she would attend created a hostile work environment.

180.     That same month, Tom Bulleit asked to use Ms. Major's photo in his book entitled *Bulleit Proof*.

181.     Before Ms. Major could answer, Ed Bello, the Bulleit Brand Director, refused Mr. Bulleit permission, making the decision for Ms. Major and without Ms. Major's input.

182.     When Ms. Major sought to discuss this decision and the process leading up to it, Mr. Bello sent email informing Ms. Major that his decision as to whether or not her picture could be included in a book was not up for discussion.

183.     This created a hostile work environment.

184. In **December 2019**, Ms. Major participated in several marketing events in Atlanta, Georgia, again with no assistance, and again without proper remuneration or talent fee.

185. She also organized and oversaw the Second KOBBE event, also without proper remuneration.

186. As an end-of-year bonus, Dickel Bottled in Bond was named Whiskey of the Year by Whiskey Advocate and was the top-rated American Whiskey of 2019 by Wine Enthusiast.

187. While Ms. Austin authored the idea of creating a "bottled in bond" whisky, Plaintiff and Mr. MacKay led the execution of the blending by instructing Ms. Austin as to which liquids to blend and in what quantity in order to achieve the desired result.

188. Defendant decided to credit Ms. Austin for the creation of this whisky instead of Ms. Major.

189. Obviously, Diageo giving credit to a white woman for the hard work and brilliance of an African-American woman created a hostile work environment.

190. In **February 2020**, Ms. Major again participated in marketing events for Kroger Women in Spirits Event in Cincinnati, Ohio, for which she arranged her own travel.

191. This particular marketing campaign generated in excess of $1,000,000 in revenue for Diageo, on whose behalf Ms. Major signed cases of liquid and gave a lecture.

192. Non-party Kathy Espinosa, Diageo's sales representative in Ohio, was responsible for organizing this event.

193. When Ms. Major arrived in Cincinnati, Ms. Espinosa asked Ms. Major if her talent fee had been paid, as Ms. Espinosa had been assured by other Diageo employees that it had.

194. This was not the first time that Ms. Major learned that Diageo was falsely telling other employees that Ms. Major was properly compensated for extra work.

195.    Diageo's failure to properly compensate Ms. Major created a hostile work environment.

196.    In **March 2020**, Ms. Major oversaw the launch of Blenders' Select alongside Johnnie Walker's Jane Walker in New York City.

197.    This marketing trip lasted three days, and each day was crammed with multiple events over at least a 12 hour period.

198.    As usual, Ms. Major planned the blending lab, ordered materials and set up the lab for participants before getting on stage.

199.    Among other events, Ms. Major participated in a panel discussion and Q&A hosted by Cherry Bombe Podcast with other females in the spirits industry, then cocktail hour, where Ms. Major mingled with guests and discussed Blender's Select.

200.    Ms. Major and Emma Walker both gave presentations to audiences, who observed that Diageo treated Ms. Walker, a white woman, better than they treated Ms. Major, an African-American woman, as Ms. Major had to set up and clean up her blending lab presentation while Ms. Walker, who presented a tasting, did not[1].

201.    At a dinner for NYC Bloggers, Ms. Major presented for a dinner with twenty influencers/bloggers of color.

202.    During this event, Ms. Major introduced each liquid, then give a toast for each course.

203.    When this evening event was over, true to form, Diageo had not arranged for Ms. Major to be transported back to her hotel, leaving her literally stranded in the rain.

---

[1] https://www.whiskeynetwork.net/diageo-women, last accessed April 3, 2022.

204.    On her last day, she visited the New York Times, Vibe Magazine, and the Daily Beast, sitting for interviews at each media outlet, and flew home the same evening.

205.    Perhaps unsurprisingly, Ms. Major incurred massive amounts of overtime, as this trip involved weekend travel and hours of preparation, but received no remuneration and no Talent Fee.

206.    It was Ms. Major's idea to release Blender's Select in March, 2020.

207.    This blend was launched alongside Johnnie Walker's Jane Walker, but there is a major discrepancy in the packaging: Emma Walker's signature is on every bottle of Jane Walker, even though she created the liquor with a team, while Ms. Major's name is nowhere on the label for Blender's Select, and Ms. Major blended this liquor alone.

208.    Unlike other female blenders, Ms. Major was the only individual involved in creating this particular blend, as opposed to part of a team.

209.    Despite being the sole creator, Diageo gave credit to Ms. Major's white supervisor, Mr. MacKay.

210.    Upon discovering that Diageo had yet again given credit for the hard work and brilliance of a woman of color to a white employee, Ms. Major requested that the hang tags on the bottles of Blender's Select be changed to accurately reflect that she alone blended this whisky.

211.    Diageo also launched a national advertising campaign across major retailers such as Target, Kroger, Meijer, among others, featuring Ms. Major's image without compensation to Ms. Major, and as a result, Bulleit's sales increase approximately 30%.

212.    Due to the COVID-19 pandemic, Ms. Major worked from home part time, but continued to go into work.

213.    In contrast, non-party and white woman Ms. Lewis worked from home in March 2020 and did not return to work until late July, 2020.

214.    While on the one hand this demonstrated that Ms. Major was a much more essential employee than Ms. Lewis, it is disturbing that Diageo would put any of their employees' lives in danger during a global pandemic in order to keep them working.

215.    The whiskey that Ms. Major created, Blenders Select, won the Gold Medal at San Francisco World Spirits Competition.

216.    Mr. MacKay emailed the team about congratulating Ms. Major, and suggested to Ms. Kelly and Mr. Bello that they recognize Ms. Major's achievement.  Bulleit Bourbon posted a pic of the bottle on their Instagram page, but not a picture of Ms. Major.

217.    As a contrasting example, Ms. Austin's image is frequently posted on Dickel's webpage and Instagram account, but Ms. Major, a woman of color, was rarely featured on Bulleit's webpage or Instagram account.

218.    Ms. Austin has not accomplished half of what Ms. Major has, nor has Ms. Austin created the value for Diageo that Ms. Major has.

219.    The obviously differential treatment received by white women and African-American women created a hostile work environment.

220.    That same month, Ms. Major received a $3,000 bonus for "the work [she'd] done for the past 12 months."

221.    In **April 2020**, Ms. Major attended a virtual marketing event called the Chat and Cheers event, which had over 400 attendees.

222.    This was after work hours and Ms. Major was not compensated, nor did she receive a Talent Fee.

223.     In **May 2020**, Ms. Major emailed Ms. Kelly regarding the racism she experienced during the taping of the Adam Carolla show.

224.     There was no resolution of this issue.

225.     In **June 2020**, Ms. Major also emailed the Diageo leadership, calling them to action in an email pointing out multiple disturbing truths:  Bulleit's failure to comment on George Floyd's murder, while every other Diageo brand made a statement; Bulleit's failure to diversify its workforce, with Ms. Major still the only African-American employee working at Shelbyville; Bulleit's failure to confront accusations of racism on behalf of the founder and the brand itself; in short, pointing out Bulleit's failure to stand with the African-American community while exploiting Ms. Major as an African-American woman and failing to credit her accomplishments, instead giving credit to white employees.

226.     This was also the month that non-party Laura Watt first met with Ms. Major, and Ms. Major expressed all of her concerns.

227.     Determined to be heard, Ms. Major also scheduled a meeting with Ivan Menezes, Diageo's CEO, in the hopes of discussing the ongoing discrimination she suffered.

228.     In **July 2020**, Ms. Major continued to work both on distilling and on marketing events for Diageo, increasing virtual events for the Bulleit Brand.

229.     Ms. Major also sought to create diversity initiatives, partnering with AHEAD, an African-American Employee Resource Group, and NY Marketing teams, and proposed an internship for people of color to enter the whiskey distilling industry, which proposal was implemented.

230.     In **August 2020**, pushed beyond her capacity to stomach the constant discrimination she suffered at Diageo's hands, Ms. Major retained counsel, and he sent Diageo a

letter on August 11, 2020, wherein Ms. Major demanded appropriate compensation for her time and skills, and suggested venturing into a mutually beneficial relationship with Ms. Major as Blender.

231.    In retaliation for complaining often and bitterly about the differential treatment she received as a person of color, all of Ms. Major's media opportunities were suspended and, at her previously scheduled media appearances, she was replaced by white employees.

232.    Ms. Major's media opportunities were never reinstated.

233.    These instances include but are not limited to Aero Mexico, Cantu, Discovery Channel, and NBA Bubble.

234.    It is noteworthy that Ms. Major's white counterparts continued to participate in these media opportunities, but then again, they had not complained about discrimination and disparate treatment.

235.    Plaintiff made no further marketing appearances in New York City, thus preventing the citizens of New York City from being exposed to and inspired by Plaintiff's brilliance, and thus Defendant's retaliation against Plaintiff had an impact in New York City.

236.    Ms. Major's appointment with the CEO was canceled by Diageo.

237.    Ms. Fawn Weaver, the founder of Uncle Nearest Whiskey, made false claims to having the first African American Blender.

238.    Ms. Major received emails and calls from Ms. Kelly and Allison Fleischer about a rebuttal to Ms. Weaver's false claim, a rebuttal which never occurred despite Ms. Kelly's assurances that she would take care of it.

239.    Diageo simply allowed these false claims to circulate, despite knowing that Ms. Major was the first African-American whiskey blender.

240.     Ms. Major also noticed that her team distanced themselves from her.

241.     As opposed to the unrelenting tide of emails Ms. Major usually received, her inbox was alarmingly quiet.

242.     When Ms. Major emailed Ms. Kelly, Ms. Fleischer, and Mr. Bello about World Water Week, no one replied.

243.     All of this created a hostile work environment for Ms. Major.

244.     Ironically, the following month, **September 2020**, Ms. Major won Diageo's Global Craftsperson of the Year award.

245.     In **October 2020**, MS. Major and Diageo entered mediation.

246.     Due to the emotional and physical distress she suffered while in mediation, Ms. Major requested a medical leave.

247.     This request was immediately exploited by Diageo's attorneys, who mentioned it in an attempt to pressure Ms. Major to accept a settlement.

248.     Ms. Major filed a complaint with Speak UP – Diageo's anonymous tipline.

249.     Instead of being properly investigated, her complaint was immediately forwarded to counsel, who also used this in the mediation.

250.     Thereafter, Ms. Major received a letter from Diageo's lawyer, stating when Ms. Major returns to work at Diageo, she will be expected to focus on lab duties, as Diageo "did not foresee using Ms. Major for marketing anymore."

251.     The mediation ended without settlement.

252.     In **December 2020**, Whiskey Advocate named Blender's Select its #4 top whiskey – the first time any Bulleit blend had been named among Whiskey Advocate's Top Twenty blends.

Case 1:22-cv-03027-LJL   Document 1-1   Filed 04/12/22   Page 29 of 34

253.    Despite this incredible accomplishment, Defendant took no steps to congratulate Plaintiff or even to acknowledge that it was her hard work and brilliance that resulted in this laudation.

254.    Instead, once again, Defendant chose to pass off Plaintiff's work as that of a white woman, as Ms. Fleischer posted on Diageo's internal social media platform that Blender's Select was a collaboration between Plaintiff and Bess Hughes, the Innovation Manager and a white woman.

255.    This was in retaliation for Ms. Major continuing to advocate for equal treatment, and created a hostile work environment.

256.    Despite Ms. Major having created and pitched the idea, and then blended it herself, she received no proper remuneration for her work.

257.    In **February and March 2021**, Diageo once again and unironically exploited Ms. Major – using her likeness for Black History Month and Women's History Month marketing campaigns for Bulleit.

258.    As a result of these successful marketing campaigns, Diageo announced record sales of Bulleit Bourbon.

259.    Ms. Major also received emails wherein she was warned that she could be terminated for making statements to the media which were not approved by Diageo.

260.    Ms. Major received no remuneration or Talent Fee for the use of her likeness.

261.    Diageo North America also recognized Ms. Austin as being a "first", which recognition Defendant never extended to Plaintiff – another blatant example of the differential treatment experienced by white employees and employees of color.

262.    All of the above created a hostile work environment and disparate impact.

263.    Ironically, **in May 2021,** Diageo also announced a collaboration called ProngHorn to help entrepreneurs of color in the distilling industry.

264.    Finally, in **June 2021**, Ms. Major learned that she had developed hypertension as a result of her emotional distress, and was constructively terminated by Diageo.

### AS AND FOR A FIRST CAUSE OF ACTION
### DISCRIMINATION BASED ON RACE
### IN VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW

265.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs with the same force and effect as if set forth at length herein.

266.    The discrimination based on race perpetrated by Defendant substantially interfered with Plaintiff's employment and created an intimidating, hostile, and offensive work environment in violation of New York City Human Rights Law (New York City Administrative Code § 8-107).

267.    Defendant's actions as described herein constitute an ongoing course of unlawful discriminatory practices as defined in the New York City Human Rights Law, which have had an impact within New York City.

268.    As a direct and proximate result of Defendant's unlawful employment practices, Plaintiff has suffered the indignity of discrimination based on race, the invasion of her rights to be free from discrimination based on race, and great humiliation.

269.    As a further and proximate result of these unlawful employment practices, Plaintiff has suffered extreme mental anguish, physical injury, outrage, severe anxiety about her future, painful embarrassment among her friends and co-workers, disruption of her personal life and loss of enjoyment of the ordinary pleasures of everyday life, as well as damage to her physical health.

270.    As a result of Defendant's violation of New York City Human Rights Law (New York City Administrative Code § 8-107), Plaintiff has been damaged in a sum to be determined at

trial, but which exceed the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

271. Plaintiff also demands the attorney's fees incurred by her in this action.

272. Because Diageo's actions were performed with malice and without justification or excuse, Plaintiff is also entitled to punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
## DISPARATE TREATMENT
## IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

273. Plaintiff repeats and realleges the above allegations with the same force and effect as if set forth at length herein.

274. Defendant has treated white women better than Defendant treated Plaintiff because Plaintiff is an African-American woman.

275. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered the indignity of disparate treatment, discrimination, the invasion of her rights to be free from discrimination, and great humiliation.

276. As a further and proximate result of these unlawful practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future, painful embarrassment among her friends, disruption of her personal life and loss of enjoyment of the ordinary pleasures of everyday life.

277. As a result of the defendants' violation of New York City Human Rights Law, Plaintiff has been damaged in a sum to be determined at trial, but which exceed the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

278. Plaintiff also demands attorney's fees.

279.    Because Diageo's actions were performed with malice and without justification or excuse, Plaintiff is also entitled to punitive damages.

### AS AND FOR A THIRD CAUSE OF ACTION
### RETALIATION BASED ON RACE
### IN VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW

280.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs with the same force and effect as if set forth at length herein.

281.    Defendant removed Plaintiff from all marketing appearances in retaliation for making multiple complaints of discrimination based on race in violation of New York City Human Rights Law (New York City Administrative Code § 8-107).

282.    Defendant constructively terminated Plaintiff in retaliation for making multiple complaints of discrimination based on race in violation of New York City Human Rights Law (New York City Administrative Code § 8-107).

283.    Defendant's actions as described herein constitute retaliation as defined in the New York City Human Rights Law.

284.    As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered great humiliation and mental anguish, lost wages and physical injury.

285.    As a further and proximate result of the retaliation, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future, painful embarrassment among her friends and co-workers, damage to her good reputation, disruption of her personal life and loss of enjoyment of the ordinary pleasures of everyday life.

286.    As a result of Defendant's violation of New York City Human Rights Law (New York City Administrative Code § 8-107), Plaintiff has been damaged in a sum to be determined at

trial, but which exceed the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

287.    Plaintiff also demands the attorney's fees incurred by her in this action.

288.    Because Defendant's actions were performed with malice and without justification or excuse, Plaintiff is also entitled to punitive damages.

**WHEREFORE,** Plaintiff seeks compensatory and punitive damages in an amount to be determined at trial but which exceeds the jurisdictional limits of all lower court which would otherwise have jurisdiction; attorney's fees; and any further and other relief which the Court deems just and proper.

### JURY TRIAL DEMANDED

Dated: New York, New York
     April  8 , 2022

                    Respectfully submitted,
                    Trachtman & Trachtman


                    By:  _Laura Trachtman_
                    Laura M. Trachtman
                    Attorneys for Plaintiff Eboni Major
                    48 Wall Street, 11th Floor
                    New York, New York 10005
                    LMT@TraxLaw.com
                    (917) 676-7317

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

EBONI MAJOR,

                                    Plaintiff,

                    -against-

DIAGEO NORTH AMERICA, INC.,

                                    Defendant.

Index No.

**VERIFICATION**

Date Purchased:

     Laura M. Trachtman, an attorney admitted to practice before the Courts of this State, does hereby affirm that the Verified Complaint is true to the knowledge of the affirmant, except as to matters alleged on information and belief, and that as to those matters she believes it to be true, and this Verification is made pursuant to Civil Practice Law and Rules § 3020, as Plaintiff is not in the county where the affirmant has her office.

Laura M. Trachtman